IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WINFRED WITHERSPOON, #325747 *
Petitioner
v. * CIVIL ACTION NO. JFM-09-1607

BOBBY SHEARIN and *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND *
Respondents.
***

MEMORANDUM

Pending before the court is petitioner's writ of habeas corpus and respondents' answer thereto. Paper Nos. 1 & 10. After review of these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)((2). For reasons that follow the petition will be denied and dismissed with prejudice.

Procedural History

Petitioner was charged in the Circuit Court for Baltimore County with two counts of theft under $500.00 and one count of identity fraud to avoid prosecution.[1] Paper No. 10, Ex. 1. On June 9 and June 10, 2005, petitioner's criminal case involving the two misdemeanor counts of theft was heard before a jury, Judge Lawrence R. Daniels presiding. *Id.*, Exs. 2 & 3.

The facts adduced at trial, as described by the Court of Special Appeals of Maryland, were as follows:

> Between November 14 and November 15, 2003, Rudolph Rhoades, III left his car in the parking garage at Penn Station in Baltimore City, while he embarked on a trip to New York City. When he returned, he saw that the change compartment in his car

---

[1] The fraud charge was nolle prossed. Paper No. 10, Ex. 1 at pg. 6.

was on the floor and that his social security card and bank card were missing. He reported these items stolen to the Baltimore City Police Department. At trial, Mr. Rhoades testified that he did not know appellant and that he never gave appellant or anyone else permission to use or possess his social security card or any other identification of his.

On March 17, 2004, Pamela Stach, then a student at Towson University, parked her red 1995 Honda Civic in the Towsontown garage at Towson University. Late that day, Timothy Cox arrived at the Towsontown garage and parked his truck near Ms. Stach's Honda. While sitting in his truck, Mr. Cox observed a man go into one car and then proceed to another car and get into that car.

At the first car, Ms. Stach's red Honda Civic, which was parked about fifty feet from his truck, Mr. Cox observed the man open, go through the trunk of that car, and then close it. After the man left the first car, Mr. Cox observed him look into various cars, and when a car came, the man walked away from the cars in a circle around the garage. When the man returned to the second car, a green car about fifteen feet from Mr. Cox's truck, the man opened the door by leaning his body up against it and got into the car. Mr. Cox testified that he did not observe the man using a key. The man then went through the trunk, the glove box, ash tray, and other areas in the car. Mr. Cox testified that the man walked toward him when going from one car to another, and that he was wearing a baseball cap but nothing covering his face. Mr. Cox also testified that it was daytime when he observed the man and that he had plenty of sunlight plus the lights in the garage to illuminate his view of the man.

When Mr. Cox saw the man go into the second vehicle, he called 911. The police arrived three to five minutes later. Mr. Cox approached the officers and gave a statement. The officers informed him that they had picked someone up that fit Mr. Cox's description. They immediately took Mr. Cox to identify the man that they had apprehended. Mr. Cox testified that the man was wearing the same clothing and was in the same general condition as the man he had observed breaking into cars. Mr. Cox indentified that man again at trial as appellant.

At approximately 1:30 p.m. on March 17, Corporal David Nalesnik received a call in reference to a subject breaking into cars in the Towsontown garage and responded to that location. Upon arrival, Corporal Nalesnik observed a Baltimore County police officer detaining appellant, who matched the description of the individual breaking into cars. The individual identified himself as Rudolph Roades and showed the officers a Maryland ID card and a social security card identifying him as Rudolph Rhoades. The identification cards were entered into evidence. In court, Corporal Nalesnik identified appellant as that individual. Corporal Nalesnik testified that he was able to determine appellant's true identity because of information he had

> received from UMAB that a Winfred Witherspoon was "breaking in cars at this location."
>
> When Ms. Stach returned to her car after her evening class that Thursday, she found her car in disarray and discovered a business card from a detective asking her to call him. She was able to determine that over a dollar in change was missing from her car. Ms. Stach testified at trial that she had never met appellant and there was no reason that his fingerprints would be in her car.
>
> Detective Matthew Tewey, of the Towson University Police, processed two fingerprints from the interior of Ms. Stach's Honda Civil and submitted them to the Maryland State Police for analysis. The fingerprint cards were admitted into evidence.
>
> Timothy Ostendorfer, a latent fingerprint examiner from the Forensic Science Division of the Maryland State Police, testified regarding his analysis of those fingerprint cards after the court qualified him as an expert. Mr. Ostendorfer testified that "one of the fingerprints was found to be positively identical to the left ring finger of Winfred Witherspoon." The court admitted the written results of the forensic analysis into evidence.

Paper No. 10, Ex. 6 at pgs. 1-4.

After approximately thirty minutes of deliberation, the jury found petitioner guilty of the theft charges. *Id*., Ex. 3, Tr. at 81-82. Judge Daniels sentenced petitioner to two one-year terms to run consecutive to each other and to all sentences petitioner was serving at that time. *Id*., Ex. 3, Tr. at 84. Petitioner filed a counseled appeal alleging that Judge Daniels erred in allowing Corporal Nalesnik to testify that police had received an alert that petitioner was breaking into cars at the University of Maryland at Baltimore ("UMAB"). *Id*., Ex. 4. On December 7, 2006, the Court of Special Appeals of Maryland affirmed the conviction.[2] *Id*., Ex. 6.

---

[2] The complete Court of Special Appeals opinion was not provided to the Court. As the issue presented on direct appeal is not raised here and a full copy of the appellate opinion is not relevant for court review, I find the omission to be harmless error.

In January of 2007, petitioner filed a petition for post-conviction relief in the Circuit Court for Baltimore County which, as later amended and supplemented by petitioner and post-conviction counsel, raised multiple grounds.[3] Paper No. 10, Exs. 7-10. After hearing argument on August 6, 2008, post-conviction relief was granted in part[4] and denied in part by Circuit Court Judge Thomas J. Bollinger Sr. on August 15, 2008. Paper No. 10, Ex. 12. Petitioner filed an application for leave to appeal, raising claims of bias and error against Judge Bollinger and belated claiming ineffective assistance of appellate. *Id.*, Ex. 13. On November 14, 2009, the Court of Special Appeals denied petitioner's application for leave to appeal. *Id.*, Ex. 14.

The following grounds have been generously construed from the *pro se* habeas corpus petition:

A. Petitioner was denied pre-trial credits for time spent in custody under his twin brother's name;

B. Petitioner's sentence violated the Double Jeopardy Clause as he was charged and convicted in two cases stemming from one criminal episode using the same evidence;

---

[3] Petitioner was permitted to raise his post-conviction issues orally. He decided to proceed on the issues raised in his supplemental pro se and counseled petitions. Paper No. 10, Ex. 11 at pgs. 4-31. These issues went to: (1) the failure to run petitioner's prints through the state fingerprint identification system, resulting in his being falsely charged under his brother Wilfred Witherspoon's name in an earlier case, thus "tainting" the charging document in the later theft case; (2) petitioner was never notified of the additional theft charges; (3) his rights under the Intrastate Detainer Act were violated; (4) Corporal Nalesnik lied under oath regarding the confirmation of petitioner's identification; (5) counsel was ineffective for failing to: file pre-trial motions, raise the intrastate issue in pre-trial proceedings, instruct petitioner as to how the court was proceeding with two different theft cases in one jury trial, move to strike or request an instruction, thereby waiving the issue on appeal, clarify the pre-trial credit issue at sentencing, file a motion for sentence modification and/or review before a three-judge panel, and strike Corporal Nalesnik's testimony regarding prior bad acts; (6) the sentence was not permitted by law as the theft offenses should have been merged; and (7) the trial court failed to award him pre-trial credits. *Id*.

[4] The post-conviction court found that trial counsel's failure to file a motion for modification or reduction of sentence and request for sentence review by a three-judge panel was deficient. Petitioner was allowed to belatedly file those pleadings. Paper No. 10, Ex. 12 at pg. 10.

C. Petitioner was illegally charged under his twin brother's name and never received notice of the additional charges until the day of trial, thus violating his right to be informed of the accusations made against him and denying him "due process" as he could not make a request to the prosecutor and clerk to obtain final disposition of his charges under the "intrastate [detainer] act" so as to satisfy his speedy trial rights; and

D. Appellate counsel was ineffective for failing to raise the above issues on appeal and to consult with petitioner about his case and the grounds raised on direct appeal, filed while petitioner was in a Division of Correction mental health facility.

Threshold Considerations

A. Exhaustion of State Remedies

Prior to seek federal habeas relief, a petitioner is required to exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U.S. 509 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking certiorari to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals. Petitioner no longer has any direct or collateral review remedies available to him with respect to the claims raised in this court. Accordingly, his claims will be considered exhausted.

B. Statute of Limitations

There is no contention that the petition is time-barred pursuant to 28 U.S.C. § 2244(d).

C. Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court

with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728 (1999); 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed the petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S.298, 314 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009); *see also Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (a habeas petitioner may overcome a procedural default by showing cause and prejudice or by establishing that his confinement constitutes a miscarriage of justice). The miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows

that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

Respondents claim that petitioner's first, second, and third claims are procedurally defaulted because while they were raised on post-conviction review, Judge Bollinger deemed them waived as petitioner should have raised them on direct appeal. Respondents further claim that as petitioner's fourth claim regarding ineffective assistance of appellate counsel was only raised in petitioner's application for leave to appeal from the post-conviction decision, the ground was not presented to all appropriate state courts and is also procedurally defaulted. The court agrees.

Petitioner was given an opportunity to file a reply explaining why his claims should not be procedurally defaulted. Paper No. 11. He has not filed a response. Because his grounds are defaulted and he has failed to meet the cause and prejudice or actual innocence standards, his claims and the petition shall be denied and dismissed.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when the prisoner shows, at least, that ... jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Petitioner does not satisfy this standard, and the court declines to issue a certificate of appealability. A separate order shall be entered reflecting the foregoing Memorandum.

Date: February 25, 2010

/s/
J. Frederick Motz
United States District Judge